# Exhibit D

# in   uest
## INVESTIGATIONS & PROTECTION
"Uncover the Power of Information"

UTAHDETECTIVE.COM

David W Lundberg, Director

PO Box 900944 Sandy, Utah 84090

OFFICE: (866) 363-2422

FAX: (801) 795-4199

www.UtahDetective.com / info@UtahDetective.com

---

March 12, 2009

Kathleen McDonald, Attorney at Law

JONES, WALDO, HOLBROOK & McDONOUGH

170 South Main Street #1500

Salt Lake City, UT 84111

RE: Cavanaugh v. Woods Cross City

1

1  Please accept this as my expert report pursuant to Rule 26 of Civil Procedure and pertaining
2  to Cavanaugh v. Woods Cross City. In preparation for my report, I have reviewed the
3  following documentation, authorities, and materials:

4      The Complaint.

5      The Answer.

6      Discovery with regard to the parties in the case including Interrogatories and
7      Deposition.

8      Relevant sections of the Utah Code Annotated.

9      I have reviewed and interviewed two Utah police officers determined the
10     understanding, training, and care applicable to Utah police officers use of
11     force.

12     I visited the scene of this incident and carefully walked around the premises
13     running hypothetical questions on what could have possibly happened on the
14     night in question.

15     Radio transmissions on the date of the incident.

16 I offer my opinion and analysis of this case based on my experience and training as a law
17 enforcement officer from 1981 through 1999. My experience includes policy creation and
18 analysis, police corruption and excessive force investigations, supervisory upon the
19 promotion to the rank of Sergeant, including but not limited to the investigation of every
20 aspect of criminal activity and directing community oriented policing. I have knowledge of
21 numerous allegations of excessive force by members of the Sandy Police Department where
22 I was employed. I experienced and participated in related investigations toward members of
23 my department and found some of these allegations justified and some within the
24 appropriate use of force as stated in policy, procedures and within the State and local law.

25 I have been a licensed private investigator since 1999. I have experience in the investigation
26 of civil and criminal matters.

27 I have no bias towards this case and offer only my opinion based on the documentation and
28 evidence provided to me. In review of said evidence and documentation I provide the
29 following opinion.

30 Police Officers are trained and continuously engaged in the investigation of domestic
31 disturbances. Social, racial, economic, sexual orientation, married or in a relationship of any
32 kind has no bearing on the potential threat a domestic dispute can present to law
33 enforcement. Officers depend on information provided by a dispatcher who obtained
34 information from a complainant. Officers understand, based on experience and training that
35 information provided by the complainant can be false or clouded due to high emotion,
36 intoxication, hearsay or perceptions that may not reflect the reality of the situation. Officers
37 are trained to prepare for any situation regardless of the information provided by the
38 dispatcher via the complainant.

39 In this case, evidence and documentation state that Brad Cavanaugh called Woods Cross
40 Police dispatch reporting that his wife Shannon had engaged in a domestic dispute with
41 him at their residence. Mr. Cavanaugh reported that both he and his wife were intoxicated
42 and that she possessed a knife. Mr. Cavanaugh reported that his wife had left the home. Mr.
43 Cavanaugh reported that his wife made no threat prior to leaving the residence.

44 Woods Cross dispatch advised Officer Davis and others responding of the information
45 provided by Mr. Cavanaugh.

46 In my opinion, Officer Davis and other law enforcement responders considered the
47 following prior to arrival at the Cavanaugh residence; A woman involved in a domestic
48 dispute had left the residence with a knife while intoxicated. Officers are trained to consider
49 that intoxicated individuals may possess less judgment and conflict resolution skills than a
50 person not under the influence of alcohol or drugs and or influenced by mental health
51 issues.

52 Officers are trained to understand that persons involved in domestic disputes may be
53 emotionally disturbed temporarily or permanently. Officers are trained to approach and
54 engage people involved in domestic disputes with the heightened mental state of caution
55 and self preservation. The safety of all involved is paramount.

56 It was reported that Officer Davis dropped his flashlight and notebook as Shannon walked
57 toward the front door of her residence. The fact that Officer Davis ordered Shannon to stop
58 is in dispute. The fact that Officer Davis attempted to grab her arm in order to physically

3

59 restrain her is in dispute. Officer Davis walked up behind Shannon as she approached the
60 front door of her residence. The evidence and documentation shows that Officer Davis
61 deployed his Taser striking Shannon in the back before she entered the home. Shannon
62 then fell striking her head on the hard surface on or near the cement steps adjacent to the
63 front door of residence. Prior to the confrontation between Officer Davis and Shannon, a
64 female Officer radioed that Shannon had possession of a knife and was outside her
65 residence.

66 In review of the reenactment video, deposition and other documents, my opinion is based
67 on the fact that Officer Davis believed Shannon was emotional and intoxicated. Officer
68 Davis believed that Shannon may possess a knife and her entering the residence may
69 potentially lead to Shannon injuring herself, her husband or child. Officer Davis attempted
70 to take physical control of Shannon by reaching out for her arm initially. Based on that
71 claim, it is reasonable to wonder why Officer did not attempt to take physical custody by a
72 "hands on" technique again as she walked toward the residence. Based on Shannon's
73 physical stature and her non-confrontational resistance that was based solely on her walking
74 away from Officer Davis. I may have chosen another method to stop and assess Shannon's
75 condition and intentions. By placing both arms around her and turning quickly, she would
76 lose her footing and could be lowered to the ground. By grasping her wrist at that point a
77 pain compliance hold could be administered while maintaining control from the threat of a
78 knife.

79 In review of the audio portion of the Officer Moore dashboard camera, I found that the
80 recording of the ambient sound began after Sharron had suffered the effects of the Taser.
81 The same audio and video continued long after Officer Moore had left the scene. I question
82 why the camera was not activated until after the Taser was deployed when it is apparent that
83 the recoding device is on and functioning through Officer Moore's shift.

84 Responding Officer's could have informed dispatch to instruct the complainant by phone to
85 lock the door from the inside, thus preventing her re-entry.

86 Officer Davis knowing the results of a taser deployment upon a human body should have
87 been concerned about the potential for injury when the subject falls upon a hard surface.

4

03/27/2009 11:29 IFAX slcfax5@joneswaldo.com → forward
Case 1:08-cv-00032-TC-BCW   Document 51-8   Filed 03/30/09   Page 6 of 13
☒006/010

88  The written statement provided by witness James Murphy dated December 8, 2006 was
89  found in my opinion to be credible and accurate. Mr. Murphy stated in the same report that
90  Shannon's hands were visible and nothing was observed in them. In the audio recording
91  obtained from Officer Moore's dash cam, at approximately 1:40 AM on December 9, 2006
92  Mr. Murphy was heard to say that Officer Davis took two steps back when following
93  Shannon. After taking the steps back, Officer Davis deployed the Taser according to Mr.
94  Murphy. Without further evidence or audio recordings of the events prior to the Taser
95  deployment, I can not suggest that James Murphy wasn't truthful in his statement.

96  Use of force education and procedure are standard among Law Enforcement Agencies in
97  the State of Utah. Tactics and Force Continuum ideology is a standard part of training and
98  testing within the Utah Peace Officer Standards and Training as well as continued
99  education with Police Agencies.

100  Levels of Resistance by a subject are as follows:

101  Level One - Presence

102  Level Two - Verbal Resistance

103  Level Three - Passive Physical Resistance (Walking away)

104  Level Four - Active Physical Resistance (Pulling away)

105  Level Five - Aggressive Physical Resistance (Officer believes attack may injure but not
106  cause serious injury or death)

107  Level Six - Aggravated Physical Resistance (Officer believes attack may cause death or
108  serious injury)

109  Levels of Response by an Officer are as follows:

110  Level One - Officer Presence (Uniform, patrol vehicle)

111  Level Two - Verbal Direction of Commands (Stop, come here, remain where you are, etc.)

112  Level Three - Physical Control (OC spray, take down, pain compliance)

113    Level Four - Intermediate Weapons (Baton, ASP, Taser)

114    Level Five - Incapacitating Control (Strike to major nerve are a of body)

115    Level Six - Deadly Force (Firearm, other weapon or physical tactic that may result in death
116    or serious bodily injury)

6

117 Exhibit A on page six and seven, lines 111 and 112 (Example of use of force
118 continuum)

### Use of Force/Levels of Resistance Guidelines Chart

Red squares indicate suggested, acceptable, beginning response levels. Any unacceptable response requires explanation. Definitions for levels of resistance and response are listed following the chart below.

| | | RESISTANCE | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | PHYSICAL | | |
| | | Presence | Verbal | Passive | Active | Aggressive | Aggravated |
| **R** 1 | Arrival | ■ | ■ | ■ | ■ | ■ | ■ |
| **E** | Interview Stance | ■ | ■ | ■ | ■ | ■ | ■ |
| **S** | Dialogue | ■ | ■ | ■ | ■ | ■ | ■ |
| **P** 2 | Verbal Direction | ■ | ■ | ■ | ■ | ■ | ■ |
| **O** | Touch | ■ | ■ | ■ | ■ | ■ | ■ |
| **N** | Restraint Devices | | ■ | ■ | ■ | ■ | ■ |
| **S** | Transportation | | | ■ | ■ | ■ | ■ |
| **E** 3 | Take Downs | | | ■ | ■ | ■ | ■ |
| | Pain Compliance | | | ■ | ■ | ■ | ■ |
| | Counter Moves | | | | ■ | ■ | ■ |
| 4 | Intermediate Weapons | | | | ■ | ■ | ■ |
| 5 | Incapacitation | | | | | ■ | ■ |
| 6 | Deadly Force | | | | | | ■ |

1. Officer Presence
2. Communication
3. Physical Control
4. Inter. Weapons
5. Incapacitation
6. Deadly Force

### Levels of Resistance - Suspect

- Level 1 - Presence
- Level 2 - Verbal Resistance
- Level 3 - Passive Physical Resistance
- Level 4 - Active Physical Resistance (pulling away/pushing)
- Level 5 - Aggressive Physical Resistance (officer feels attack may injure but not cause death or serious injury)
- Level 6 - Aggravated Physical Resistance (officer feels attack may cause death or serious injury)

### Levels of Response - Officer

- Level 1 - Officer Presence
- Level 2 - Verbal Direction and Commands
- Level 3 - Physical Control (pain compliance, take down, OC spray)

119

- **Level 4** - Intermediate Weapons (baton, asp, Taser)
- **Level 5** - Incapacitating Control (strike to major nerve area)
- **Level 6** - Deadly Force (firearm, strikes with or without weapon to spine, throat, eyes, or groin)

Use of Force Report

### A "Use of Force Report" must be filed under these circumstances

- Action taken that results in, or is alleged to have resulted in injury or death.
- Force applied using a non-lethal weapon (includes K-9 bite).
- Weaponless force applied to the extent it is likely to cause injury, claim of injury, or allegation of excessive force.
- Discharge of firearm or less-lethal firearm.
- Any confrontation with citizen/suspect where firearm is deployed for use.
- Force is used in less than 1% of all calls for service.

Weapons

### Weapons policy statement – General Order 61
"Officers of the Tallahassee Police Department shall use only Department issued or Department approved weapons in the performance of their duties. Officers shall participate in training and maintain qualification with their assigned weapons. Departmentally issued weapons shall only be used in the performance of their official duties."

### Qualification requirements

- Impact weapons and chemical weapons biannually
- Firearms biannually

Force Resulting in Serious Injury or Death

### Policy statement – General Order 63
"When the use of force or other action by an officer results in death or serious injury, Department staff will: conduct a thorough investigation, preserve the physical and emotional well-being of the officer(s) directly involved, and make every effort to protect human life."

### Investigation has two phases

- Criminal – conducted by TPD Homicide/Assault investigators
- Administrative – conducted by TPD Internal Affairs investigators

### External oversight

- City Attorney's Office
- Office of the State Attorney
- Leon County Grand Jury

120

8

121  According to Officer Davis in his report dated December 9, 2006, he made physical contact
122  with Shannon by grabbing her arm near the elbow. Officer Davis stated she pulled away and
123  continued toward her residence. If Officer Davis feared that Shannon had a weapon and was
124  capable under the circumstances of using it, it was not explained in his report why he chose
125  to make physical contact by grabbing her arm. Furthermore, there was no articulated
126  escalation of threat that would justify a Taser deployment. According to force continuum
127  standards as outlined on line 118 (exhibit A), the threat level did not escalate beyond the
128  point when Officer Davis first made contact with Shannon.

129  End of report.

130  David W Lundberg

# inQuest
## INVESTIGATIONS & PROTECTION
### "Uncover the Power of Information"

UTAHDETECTIVE.COM
David W Lundberg, Director
PO Box 900944 Sandy, Utah 84090
OFFICE: (866) 363-2422
FAX: (801) 795-4199
www.UtahDetective.com / info@UtahDetective.com

---

## Curriculum Vitae March 1, 2009

### SUPERVISORY / INVESTIGATIVE / INSTRUCTOR / CLOSE PROTECTION EXPERIENCE SUMMARY

David W. Lundberg

Twenty-one years Law Enforcement Experience.
Officer – Detective – Trainer – Sergeant
Nine-year private sector Investigator, Security Management Expert, Trainer and Provider.

Extensive training and experience as instructor and supervisor with
Law Enforcement and private investigative & security organizations.

**Leadership Experience:**

Police Sergeant and team leader/instructor for department in areas of patrol, crisis intervention training, emergency vehicle operations, police motorcycle training, firearms, ASP (collapsible baton instructor) and leadership instructor/ team leader and instructor for Hostage Negotiation Team. Policy development and review. Internal investigations and Police conduct review board member. Police administration incident command instructor.

Chairman of the Board, Private Investigators Association of Utah 2008.

**Recent Major Protection Mission Details:**

2007: Security of high level Federal inmates during air transport to facilities across the Nation.
Contracted by Coyne Consulting Group, Woburn, MA

2006: Executive Protection detail in Los Angeles.
Assigned close protection for CEO of a top Fortune 500 Company.
Contracted by Threat Management and Protection, Los Angeles.

1

2005: Contractor Close Protection Armed Security Escort
Katrina Hurricane Disaster, New Orleans Louisiana
Contracted by Threat Management and Protection, Los Angeles.

**2004: Contractor / Close Protection Instructor– US Military Base Security**
Fort Ord
Fort Sill
Fort Gordon
Fort Bliss


**Special Certifications and Applicable Experience:**

Expert Pistol Marksman/ assistant instructor /State of Utah (Retired LEO Nation-wide CCW)
State Certified Emergency Vehicle Operations Instructor.
BSR EP Driver Certified, Summit Point Raceway
State Certified (ASP) Baton Instructor.
Police Administrator Incident Command Trainer.
Hostage / Crisis Negotiator – Instructor. Certified by the FBI.
First Aid Instructor certified by the Red Cross.


**Trainer Vance Federal Security Services, Inc.**
Contract Security Manager and Instructor for the Tooele Army Depot Base.
First aid, self defense, Personnel Management, Weapons Trainer.

**Owner/Director of inQuest Investigations/ UtahDetective.com**
A private investigation, security and consultation firm.
Utah license UTG100724. * DUNS 557201931
Criminal defense and civil investigation.
Homicide, arson, theft, missing persons, cohabitation, corporate crimes, due diligence, insurance cases.


**Writer and Contributing Columnist**

Expert consultant to Fox News Channel, Court TV, KSL News, and others.
Former regular columnist, Salt Lake Tribune.
American Police Beat Magazine.
Utah Peace Officer Magazine.
Men's Health Magazine.
Episode writer and guest on "America's Dumbest Criminals"
Published in numerous professional newsletters and magazines.
Contributing investigative expert for the Fox News Channel, KSL Radio, and Court TV.
Sandy City Crime Prevention and Department Technical Writer.
Experience in Governmental Grant preparation and presentation.

Public Safety Policy and Procedure author and consultant.

2008 Executive Board Member, Private Investigator's Association of Utah

Graduate of the University of Utah, Management and Supervisory Program.

Graduate of the University of Louisville School of Justice Administration.

---

Hourly rate: $125.00 per hour, $250.00 minimum.
Trial and Deposition: $250.00 per hour, $1,000.00 minimum.
Related expenses, travel, documents, imaging, and research fees, per Diem additional.

---

David W. Lundberg - PO Box 900944 Sandy, Utah 84090
866-363-2422 E-mail: INFO@UTAHDETECTIVE.COM

*Personal and professional references available upon request.*